FILED IN CLERK'S OFFICE
U S D C   Atlanta

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

NOV 1 3, 2006

JAMES N HATTEN, Clerk
By: _J.R.Pinckney_ Deputy Clerk

| | |
|---|---|
| **LAKEETRA N. MASON,** ( | |
| ( | |
| **Plaintiff,** ( | |
| ( | |
| **v.** ( | **CIVIL ACTION** |
| ( | **NO.** _06 CV 2761_ |
| **CLAYTON COUNTY BOARD** ( | |
| **OF EDUCATION, BARBARA** ( | |
| **M. PULLIAM, individually** ( | |
| **and in her official capacity as** ( | |
| **Clayton County Schools'** ( | |
| **Superintendent, DONALD** ( | |
| **DUNNIGAN, individually and** ( | |
| **in his official capacity as Clayton** ( | |
| **County Schools' Director of** ( | |
| **Certified Personnel, GARY** ( | |
| **TOWNSEND, individually and** ( | |
| **in his official capacity as Clayton** ( | |
| **County Schools' Principal, FRANK** ( | |
| **MCKENZIE, individually and in** ( | |
| **his official capacity as Clayton** ( | |
| **County Schools' Assistant Principal,** ( | |
| **ANGELA WINDISCH, individually** ( | |
| **and in her official capacity as** ( | |
| **Clayton County Schools' Special** ( | |
| **Education Department Head,** ( | |
| ( | |
| **Defendants.** ( | |

**CC**

## COMPLAINT FOR DAMAGES

**COMES NOW** Lakeetra N. Mason, plaintiff herein, and files this

her complaint for damages as follows:

1.

This is a federal action brought pursuant to 42 U.S.C. Section

1983, 1988 and 1991, Title VII of the Civil Rights Act, as amended,

42 U.S.C.A. Section 2000e et seq., as amended, Americans with

Disabilities Act of 1990, as amended, 42 U.S.C.A. Section 12101 et

seq., as amended, Rehabilitation Act of 1973, as amended, and the

Fourteenth and First Amendments to the United States Constitution.

2.

Plaintiff, Lakeetra N. Mason, was employed by the Clayton

County Board of Education as a tenured Special Education Teacher

at Mt. Zion High School in Clayton County, Georgia from

August 6, 2002 through June 5, 2006.

3.

Defendant Clayton County Board of Education is a governmental

corporation located in Clayton County, Georgia and it is subject

to the jurisdiction of this court.

4.

Defendant Barbara M. Pulliam was employed as the School

Superintendent for Clayton County Board of Education during

-2-

plaintiff's employment tenure with the defendant and she is subject to the jurisdiction of this court.

5.

Defendant Donald Dunnigan was employed as Director of Certified Personnel for Clayton County Board of Education during plaintiff's employment tenure with the defendant and she is subject to the jurisdiction of this court.

6.

Defendant Gary Townsend was employed as School Principal for Clayton County Board of Education during plaintiff's employment tenure with the defendant and he is subject to the jurisdiction of this court.

7.

Defendant Frank McKenzie was employed as Assistant School Principal for Clayton County Board of Education during plaintiff's employment tenure with the defendant and he is subject to the jurisdiction of this court.

8.

Defendant Angela Windisch was employed as Special Education Department Head for Clayton County Board of Education during

-3-

plaintiff's employment tenure with the defendant and she is subject to the jurisdiction of this court.

## STATEMENT OF FACTS

### 9.

On or about August 06, 2002, plaintiff, a disabled African America female suffering from iritis (inflammation in the eyes), was hired by the Clayton County Board of Education as a Special Education Teacher at Mt. Zion High School.

### 10.

On March 3, 2003, plaintiff received an overall **satisfactory** annual evaluation from her school principal, D.K. Stout. Mr. Stout stated on plaintiff's evaluation report: "**You provided a warm, safe environment for your students. Thank you for all your hard work on their behalf. I thank you for a job well done.**"   He further stated: "**You have completed your duties in a satisfactory manner this year. Thank you for all your hard work on behalf of your students.**"

-4-

11.

In February 2003, the Clayton County Board of Education renewed plaintiff's teaching contract for the 2003-2004 school year. Plaintiff accepted the second consecutive year teaching contract before April 15, 2003.

12.

On or about November 20, 2003, William T. Napper, assistant principal at Mt. Zion High School, gave plaintiff a written reprimand for reporting to work at 8:37 a.m. instead of 8:00 a.m. In the reprimand, he stated: **"I have been very tolerable to date based on personal situations that you have encountered. You have been given ample time to fix the problems that have caused you to be late."** He further stated: **Effective immediately, you must arrive at school and sign in no later than 8:00 a.m. Further infractions will result in disciplinary actions as necessary."** Mr. Napper was aware prior to the reprimand that plaintiff's eye problems caused her to arrive after 8:00 a.m. for work.

13.

On or about November 24, 2003, Mr. Napper gave plaintiff a second written reprimand for arriving late to work. In the reprimand entitled "Notification and Documentation of Record", Mr. Napper stated: **"Ms. Mason pursuant to my letter dated November 21, 2003, you continue to come to work late." "Effective immediately, you must sign in everyday no later than 8:00 a.m. No excuses."** He further stated: **"Failure to full-fill the conditions of this document and the terms of the letter dated November 21st, 2003, will result in an unsatisfactory rating on your annual evaluation."**

14.

On April 14, 2004, plaintiff received a **satisfactory** annual evaluation from assistant principal, William T. Napper. In the evaluation report, Mr. Napper stated: **"Ms. Mason has done a good job teaching her classes and meeting the individual needs of her students."** He further stated: "**Ms. Mason needs to improve on getting to school on time."**

15.

In February 2004, the Clayton County Board of Education renewed plaintiff's teaching contract for the 2004-2005 school year. Plaintiff accepted the third consecutive year teaching contract before April 15, 2004.

16.

On or about September 13, 2004, Thomasina Goodgame, assistant principal at Mt. Zion High School, gave plaintiff a written reprimand for arriving to work after 8:00 a.m. In the reprimand entitled **"Notification and Documentation Record"**, Ms. Goodgame stated: **"Ms. Mason: You and I had a conversation in my office on Wednesday, September 8[th], 2004 at approximately 10:05 AM regarding your tardiness to work. At that time you informed me that you were having problems with your eyes which caused you to be late getting to work in the mornings. I encouraged you to see your doctor to get an excuse stating such if indeed that was the reason causing you to be late to work. The next day, you signed in at 8:15 AM. All teachers are required to work from 8:00 AM until 4:00 PM."** Ms. Goodgame further stated:

-7-

**"Effectively immediately, you must sign in everyday no later than 8:00 AM. If you have a serious medical condition which causes you to be late to work everyday, we must have a doctor's excuse stating such in detail on file."** She also stated: **"Consequently, your behavior may lead to an unsatisfactory GTDRI evaluation."**

17.

On or about December 13, 2004, Mr. Stout, school principal at Mt. Zion High School, informed plaintiff, by a letter dated December 13, 2004, that he and the Human Resources Department for the Clayton County Schools might be able **"to work out the logistics in order to change [her] work hours from 8am-4pm to 8:45am-4:45pm"** because of her medical condition concerning her eyes if she provided a statement from her physician responding to the following questions:

(1) How long it takes for your eyes to become focused upon waking (average)?
(2) How unfocused are your eyes upon waking?
(3) When focusing begins does it occur rapidly (are you able to drive/read/write immediately or does your vision improve throughout the day)?
(4) Is this condition permanent or temporary?

-8-

(5)  If temporary how long is it expected to last?
(6)  If permanent, will your focusing time and vision in general become progressively poorer or remain stable at the point you are now?
(7)  What if any additional accommodations might you need in the future.

A copy of Mr. Stout's letter to Ms. Mason was placed in the school principal's file and sent to Angela Windisch, Mt. Zion High School's Special Education Department Head, and Jackie Hubbert, Clayton County Board of Education's Assistant Superintendent for Human Resources.

18.

On January 5, 2005, plaintiff's eye physician responded to Mr. Stout's questions. The doctor stated: **"When focusing, iritis can cause pain, redness, light sensitivity and blurred vision. Some patients are able to drive, read & write. Others aren't able to because of the blurred vision, pain & light sensity."** He further stated: **"This condition can be permanent in some patients but only temporary in others."**

19

On or about January 5, 2005, plaintiff gave Mr. Stout the requested statement from her eye physician. Mr. Stout forwarded

a copy of the physician's statement to Ms. Hubbert. She gave a copy of the statement to Donald Dunnigan, Clayton County Board of Education's Director of Certified Personnel..

20.

On or about January 10, 2005, Ms. Hubbert spoke with Mr. Stout and informed him that plaintiff would meet with him on January 10, 2005 and confirm her adjusted time for reporting to work to be either 8:15 a.m., 8:30 a.m. or 8:45 a.m. She further informed that plaintiff must adhere to the new reporting time and tardiness will be a disciplinary issue hereafter. Mr. Stout was to put in writing the reporting accommodations the Clayton County Board of Education's administrators made for plaintiff because of the inflammation in her eyes.

21.

On February 17, 2005, plaintiff and Thomasina Goodgame, interim principal at Mt. Zion High School, signed the disability accommodation agreement confirming **"that [plaintiff's] working hours have been changed from 8:00 AM-4:00 PM to 8:30 AM to 4:30 PM effective Monday, January 10ᵗʰ, 2005."** A copy

-10-

of the accommodation agreement was filed in the office of the Clayton County Board of Education's Assistant Superintendent for Human Resources.

22.

On or about February 17, 2005, Frank McKenzie was an assistant principal at Mt. Zion High School and he was aware of plaintiff's eye condition which caused her to report late for work and the accommodation agreement which permitted plaintiff to report to work by 8:30 a.m., effective January 10, 2005.

23.

On or about February 17, 2005, Angela Windisch was the Special Education Department Head at Mt. Zion High School and she was aware of plaintiff's eye condition which caused her to report late for work and the accommodation agreement which permitted plaintiff to report to work by 8:30 a.m., effective January 10, 2005.

24.

In February 2005, the Clayton County Board of Education renewed plaintiff's teaching contract for the 2005-2006 school year. Plaintiff accepted the fourth consecutive teaching contract

-11-

before April 15, 2005.

25.

On March 28, 2005, plaintiff received a **satisfactory** annual teaching performance evaluation from assistant principal, William T. Napper. Mr. Napper stated on the evaluation report: **"You have performed your teacher duties and responsibilities in a professional manner. I appreciate your positive attitude and your cooperation in school matters."**

26.

The Clayton County Board of Education appointed Gary Townsend as school principal at Mt. Zion High School during the 2005-2006 school year. He, Frank McKenzie, Angela Windisch and Donald Dunnigan subjected plaintiff to employment discrimination, harassment and retaliation during the 2005-2006 school year because of her physical disability, disability accommodations, race, and sex, and her protests against their unlawful Title II conduct and her April 14, 2006 EEOC complaint.

27.

On or about November 1, 2005, Ms. Windisch discriminatorily

-12-

canvassed Mt. Zion High trying to locate plaintiff for the purpose

of harassing her because of her physical disability, disability

accommodations, effective on January 10, 2005, and race.

Ms. Windisch went to plaintiff's classroom at 2:45 p.m.  Plaintiff

was not in the room.  As Ms. Windisch was leaving the classroom,

she observed plaintiff leaving another classroom.  She did not attempt

to make contact with plaintiff.  At 3:10 p.m., Ms Windisch observed

plaintiff escorting one of her students to the school bus.  At 3:24 p.m.,

Ms. Windisch returned to plaintiff's classroon and found no one there.

At 3:38 p.m., Ms. Windisch called over the school's intercom to

plaintiff's classroom.  No one responded.  Ms. Windisch made a

written record of her canvassing activity.

28.

On or about November 2, 2005, Ms. Windisch discriminatorily

canvassed Mt. Zion High School trying to locate plaintiff for the

purpose of harassing her because of her physical disability, disability

accommodations effective on January 10, 2005, and race.

Ms. Windisch went to plaintiff's classroom at 3:08 p.m. She observed

plaintiff in the room with her paraprofessional substitute.  She did

-13-

not make any contact with plaintiff before leaving the classroom.
At 3:19 p.m., Ms. Windisch returned to plaintiff's classroom and
found no one in the room. At 3:21 p.m., she saw plaintiff coming
from the commons area walking towards 200 hallway. Ms. Windisch
later saw plaintiff's paraprofessional substitute near 600-800 hallway.
She asked the substitute whether plaintiff was in her classroom.
The substitute told her that plaintiff had left her classroom.
At 3:40 p.m., Ms. Windisch called over the school intercom to
plaintiff's room. No one responded. Ms. Windisch made a
written record of her canvassing activity.

29.

On or about November 3, 2005, Windisch discriminatorily
canvassed Mt. Zion High School trying to locate plaintiff for
the purpose of harassing her because of her physical disability,
disability accommodations effective on January 10, 2005 and race.
At 3:20 p.m., Ms. Windisch went to plaintiff's classroom and did
not find plaintiff present. She asked Ms. Davis, plaintiff's
paraprofessional, where plaintiff was located. Ms. Davis informed
her that went to make a phone call. Ms. Windisch left the room

-14-

and went looking for plaintiff in the teacher's lounge and the
hallways. She did not find plaintiff on the school premises.
At 3:21 p.m., Ms. Windisch called plaintiff's classroom over the
school intercom. No one responded. At 3.23 p.m., Ms. Windisch
returned to plaintiff's classroom. No one was in the room.
At 3:41 p.m., Ms. Windisch called over the school intercom for
plaintiff to report to the main school office. Plaintiff did not
report to the main office immediately after being called.
Ms. Windisch made a written record of her canvassing activity.

30.

On or about November 4, 2005, Ms. Windisch discriminatorily
canvassed Mt. Zion High School trying to locate plaintiff for
the purpose of harassing her because of her physical disability,
disability accommodations effective on January 10, 2005 and race.
At 3:13 p.m., Ms. Windisch observed plaintiff putting her students
on the bus. She was assisted by her two paraprofessionals, Ms. Davis
and Ms. Guy. At 3:18 p.m., Ms. Windisch went to plaintiff's
classroom. She found no one in the room. At 3:23 p.m.,
Ms. Windisch saw plaintiff at the school bus loading area. At

-15-

3:45 p.m., Ms. Windisch called over the school intercom for plaintiff to report to Mr. McKenzie's office. Plaintiff appeared at the office per the call. Ms. Windisch and Mr. McKenzie did not desire anything from plaintiff.

31.

On November 10, 2005, at 4:47 p.m., Ms. Windisch stated in her e-mail to Mr. McKenzie the following: "**I will not be at school on Friday. Please do an all call for Ms. Mason around 3:45 tomorrow afternoon. I will add that to my documentation when I return on Monday. She is on to us for she remained in the faculty meeting until it was dismissed. I think that is the first time I have ever seen her at a faculty meeting. Yippee! Its about time.**"

32.

On November 11, 2005, Mr. McKenzie called over the school intercom at 3:45 p.m and 3:50 p.m. for plaintiff to report to his office. Plaintiff did not immediately report to Mr. McKenzie's office. This harassing conduct continued through the end of the school year. When plaintiff arrived at Mr. McKenzie's office after being called by him daily at the end of each school day, he would

-16-

tell her that he was checking to see if she was on the school premises. White female and male teachers at Mt. Zion High School were not subjected to similar harassing conduct by Ms. Windisch and Mr. McKenzie.

33.

In November 2005, the special education paraprofessional were in the school gymnasium for make-up picture taking for students. No teacher in the special education department was in the gymnasium. Ms. Windisch came to the gymnasium and became upset when she did not see plaintiff there with her class. She asked plaintiff's paraprofessional five times where was plaintiff. Ms Windisch did not ask about the whereabouts of the other special education teachers. She left the gymnasium and walked throughout the school building and in the school parking lot looking for plaintiff. When plaintiff and Ms. Windisch returned to the gymnasium, she orally reprimanded plaintiff for leaving her students with the paraprofessional assigned to her class. Ms. Windisch did not reprimand any of the other teachers for leaving their students in the gymnasium with their paraprofessionals.

-17-

34.

During the 2005-2006 school year, Ms. Windisch asked plaintiff's
paraprofessionals several times during the school day about plaintiff's
whereabouts when she did not see plaintiff in the classroom. She
did not make similar inquiries about other special education teachers
when they were out of their classrooms.

35.

On or about November 16, 2005, between 8:00 a.m. and 9:00 a.m.,
Ms. Windisch was standing in the area where the school buses
unload students. She yelled aloud in the presence of students
and paraprofessionals the following: **"Where is that Ms. Mason!
Ms. Mason is just crazy! She is crazy."**

36.

The paraprofessionals told plaintiff that Ms. Windisch called her
crazy in their presence. Plaintiff was embarrassed and humiliated as a
result of Ms. Windisch's crazy remarks.

37.

On or about November 14, 2005, Mr. McKenzie gave plaintiff a
written reprimand, falsely accusing her of being chronically late for

-18-

work at Mt. Zion High School on October 3, 4, 10, 11, 13, 17, 20, 21, and 26, 2005. Mr. McKenzie unlawfully ordered plaintiff to report to work no later than 8:00 a.m. and to remain in the school building until 4:00 p.m. He warned plaintiff that failure to comply with this directive would lead to an unsatisfactory annual evaluation.

38.

Mr. McKenzie lacked authority to change plaintiff's work hours from those stated in the January 10, 2005 accommodations agreement signed by plaintiff and principal Thomasina Goodgame and approved by the Assistant Superintendent for Human Resources, Jackie Hubbert and to subject plaintiff to an unsatisfactory evaluation if Plaintiff did not comply with his directive.

39.

On or about January 12, 2006, Mr. McKenzie gave plaintiff a written reprimand falsely accusing her of having another person sign her in at 7:20 a.m. on January 10, 2006.

40.

On January 12, 2006, plaintiff met with principal Gary Townsend

-19-

and Mr. McKenzie and complained about being subjected to
Mr. McKenzie and Ms. Windisch's discriminatory and retaliatory
actions. Mr. Townsend did not take any action to stop the
harassment and discrimination by Mr. McKenzie and Ms. Windisch.

41.

On January 12, 2006, plaintiff e-mailed the Director of Certified
Personnel, Donald Dunnigan, and complained to him about the
harassment and discrimination by Mr. McKenzie and Ms. Windisch.
She also requested a transfer to another school.

42.

On January 12, 2006, Mr. Dunnigan responded to plaintiff's e-mail
telling her that he could not transfer her during the middle of the
school year. He advised her to speak with Mr. Townsend regarding
the continuing discrimination, harassment and retaliation at Mt. Zion
High School.

43

On January 13, 2006, Mr. Dunnigan e-mailed plaintiff and stated
that he spoke to Mr. Towsend concerning plaintiff's disability
accommodations at Mt. Zion High School. Mr. Dunnigan directed
plaintiff to contact him so they can meet and discuss her employment

-20-

complaints and disability accommodations.

44.

On or about February 6, 2006, plaintiff met with Mr. Dunnigan to discuss her discrimination, harassment and retaliation complaints and her disability accommodations. Mr. Dunnigan directed plaintiff to provide him with another medical statement from her physician.

45.

On or about February 21, 2006, plaintiff provided Mr. Dunnigan with her physician's statement concerning her iritis condition According to the statement, plaintiff's eye condition had not improved. Mr. Dunnigan met again with plaintiff concerning her employment complaints. After the meeting, he did not take any actions to stop the continuing discrimination, harassment and retaliation by Mr. McKenzie, Ms. Windisch and Mr. Townsend at Mt. Zion High School.

46.

On February 27, 2006, Mr. McKenzie gave plaintiff a written reprimand and falsely accused her of being excessively late to work on January 6, 11, 14, 24, 26, 30, and 31, 2006 He warned her

-21-

that her work hours were from 8:00 a.m. to 4:00 p.m. and that her failure to sign-in by 8:00 a.m. will subject her to an unsatisfactory annual evaluation.

47.

On February 27, 2006, Mr. McKenzie was not authorized to change plaintiff's work hours from those agreed to by plaintiff and Thomasina Goodgame on February 17, 2005 and approved by the Assistant Superintendent for Human Resources, Jackie Hubbert, on February 22, 2005.

48.

On February 27, 2006 and thereafter, Mr. McKenzie was not authorized to subject plaintiff to an unsatisfactory annual evaluation if she reported to work at Mt. Zion High School between 8:00 a.m. and 8:30 a.m. pursuant to the February 17, 2005 accommodations agreement.

49.

On March 7, 2006, Mr. McKenzie gave plaintiff a written reprimand falsely accusing her of lacking preparation and instructional readiness when he unexpectingly visited her classroom

on March 1, 2006. He also falsely accused her of leaving her students unsupervised.

50.

On March 7, 2006, Mr. McKenzie gave plaintiff a second reprimand, falsely accusing her of reporting late to work on February 2, 7, 8, 9, 10, 13, 14, 15, 16, 27, and 28, 2006. He warned her that her work hours were from 8:00 a.m. to 4:00 p.m and that her failure to report to work by 8:00 a.m. would subject her to an unsatisfactory annual evaluation.

51.

On March 7, 2006, Mr. McKenzie was not authorized to change plaintiff's work hours from those agreed to by plaintiff and Thomasina Goodgame on February 17, 2005. He was also not authorized to subject plaintiff to an unsatisfactory annual evaluation if she continued to report to work pursuant to the February 17, 2005 disability accommodations agreement.

52.

On March 28, 2006, plaintiff received an unsatisfactory annual evaluation from Mr. McKenzie. He falsely accused plaintiff of

-23-

being excessively tardy to work during the 2005-2006 school
year as noted in three written reprimands.

53.

Mr. McKenzie's March 28, 2006 evaluation of plaintiff was
approved my school principal, Gary Townsend.

54.

Mr. Townsend urged plaintiff to resign her employment in
lieu of termination because of the alleged excessive tardies during
the 2005-2006 school year.

55.

On April 14, 2006, plaintiff filed her complaint with the
Equal Employment Opportunity Commission alleging that the
Clayton County Board of Education and her job supervisors
subjected her to continuing discrimination, harassment and
retaliation because of her physical disability, race, sex and
opposition to unlawful conduct under Title VII..

56.

On or about April 14, 2006, Mr. Townsends recommended to
Mr. Dunnigan that plaintiff's renewable employment contract with

the Clayton County Board of Education be terminated.

57.

On or about April 14, 2006, Mr. Dunnigan recommended to School Superintendent, Barbara M. Pulliam, that plaintiff's renewable employment contract be terminated.

58.

After April 14, 2006, Ms. Pulliam recommended to the Clayton County Board of Education that plaintiff renewable employment contract be terminated.

59.

Per Ms. Pulliam's recommendation, the Clayton County Board of Education terminated plaintiff's renewable teaching contract without first providing her with **notice of the reasons for the [nonrenewal] action against [her] and an [evidentiary] hearing** pursuant to O.C.G.A. Section 20-2-942(b)(1) and (b)(2).

60.

Pursuant to O.C.G.A. Section 20-2-942(b)(1) and (b)(2), plaintiff had a constitutionally protected property interest in her employment as a special education teacher with the Clayton County Board of

-25-

Education after she accepted her fourth consecutive year contract in February 2005. This property interest could only be taken from plaintiff pursuant to notice of charges and an evidentiary hearing.

61.

The defendants deprived plaintiff of due process of law when they terminated her renewable teaching contract without providing her with notice of the reasons for the nonrenewal action and an evidentiary hearing to dispute the reasons.

62.

The defendants also subjected plaintiff to continuing discrimination, harassment and retaliation in violation of her rights under Title II and Americans with Disabilities Act of 1990. Plaintiff received her right to sue letter from the EEOC on or about August 24, 2006.

63.

The defendants deprived plaintiff of equal protection when they subjected plaintiff to continuing employment discrimination, harassment and retaliation because of her physical disability, race and sex.

-26-

64.

The defendants deprived plaintiff of her rights under the Americans with Disabilities Act of 1990 by failing to provide her with reasonable employment accommodations for her physical disability during the 2005-2006 school year.

65.

As a direct and proximate result of the defendants' unlawful and malicious employment discrimination, harassment, retaliation and failure to provide disability accommodation, plaintiff suffered severe emotional distress, embarrassment and humiliation.

66.

As a direct and proximate result of the defendants' unlawful and malicious employment discrimination, harassment, retaliation and failure to provide disability accommodations, plaintiff missed over 60 days from work and she lost employment benefits in excess of $100,000.00.

67.

As a direct and proximate result of the defendants' unlawful and malicious employment discrimination, harassment, retaliation

and failure to provide disability accommodations, plaintiff incurred medical expenses in excess of $100.00.

68.

The defendants' actions and inactions violated plaintiff's federal statutory and constitutional equal protection and due process rights.

**WHEREFORE, plaintiff demands:**

(1) A judgment for loss wages and benefits to be determined at trial;

(2) A judgment for medical expenses in an amount to be determined at trial;

(3) An order directing the Clayton County Board of Education to reinstate plaintiff to her position as a special education teacher;

(4) An order enjoining the defendants from future actions which violates plaintiff's federal employment rights;

(5) An order awarding plaintiff the cost of litigating his employment claims, including attorney fees;

-28-

(6) A judgment in the amount of $5,000,000.00 to compensate her for past, present and future emotion distress, embarrassment and humiliation; and

(7) A judgment for punitive damages in the amount of $1,000,000.00

This 10th day of November, 2006.

MICHAEL B. KING 421140
Attorney for Plaintiff

**Suite 9**
**116 S. Main Street**
**Jonesboro, GA 30236**
**(770) 478-3555**

-29-